Leonard L. Finz, J.
In this action tried by the court without a jury, the question to be considered is whether the plaintiff, a social guest within the defendant’s premises has an actionable cause.
Briefly stated, the facts are these:
The plaintiff was a social guest in defendant’s one-family dwelling. While exiting from the dwelling in the company of the defendant’s son, the plaintiff sustained an injury when his “ toe *783 got stuck in the curl ” of a corner of a throw rug located at the front entranceway within the said premises. The throw rug measured approximately four feet by four feet, with one of its corners ‘1 ripped, and curled ’ ’ approximately four inches off the floor. Plaintiff contends that his foot was caught by that portion of the rug that was “ ripped and curled ” and that as a consequence, he was thrown forward causing his arm to strike and shatter a glass pane. As a result of the injury and the profuse bleeding that followed, it was necessary for plaintiff to receive emergency treatment at a local hospital where 12 sutures were required to close the lacerated wound. There remains a residual scar at the site of the injury.
Plaintiff now urges that it was the defective rug that was the proximate cause of the accident and that the said rug was a danger to the plaintiff and constituted a trap. Plaintiff urges further that the subject defect was known by the defendant for several years and that in fact the defendant ‘1 used to straighten it up that as such the defendant should have given sufficient warning to the plaintiff of the existence of the defect.
Defendant in resisting plaintiff’s claim, urges, that notwithstanding the condition of the rug and the knowledge of said condition, the status of the plaintiff was that of a social guest and bare licensee. Defendant alleges further that the subject condition, if in fact it was defective in the first instance, was not one that by its nature could be described as a trap or a hidden defect. In addition, defendant urges that the plaintiff knew or should have known of the existence of the subject rug and its defect, if any; that as such the plaintiff’s action should fail, by reason of his own negligence having contributed to the subject incident, in addition to the other defenses raised.
The law to be applied by the court is by no means novel — except perhaps its application to the facts in the case at bar. There are probably few areas of case law in which so much has been written, textbook-wise, and decision-wise as in that body of law that concerns itself with the duty owing from the owner of premises to trespassers, licensees and invitees. The law is quite clear on this subject. Its application, however, may not be as readily apparent.
Even the fledging law school student learns early in his course on torts the traditional plateaus of liability as they relate to the legal status of persons who are injured upon premises belonging to others: That the duty owing to a trespasser is to refrain from inflicting intentional, wanton, or willful injury, or to abstain from the use of “ spring guns ”, “ ensnaring devices ”, etc. (Carbone v. Mackchil Realty Corp., 296 N. Y. *784 154; Lo Casto v. Long Is. R. R. Co., 6 N. Y. 2d 475); that a bare licensee takes the premises as he finds them, the duty owing being to refrain from affirmative acts of negligence and to give warning of any known hidden dangers or traps; (Wilder v. Ayers, 2 A D 2d 354, affd. 3 N Y 2d 725, citing Restatement, Torts, § 331; Prosser, Torts [2d ed.], § 77 et seq.); that the invitee is entitled to enjoy the premises in a reasonably safe condition. (Tryon v. Chalmers, 205 App. Div. 816, app. dsmd. 240 N. Y. 580.) The often repeated principles of law set forth are as common as the law from whose name they have evolved and survived these many hundreds of years.
The classical common-law distinctions as they relate to the duty owing to trespassers, licensees and invitees, however, must be translated, not to computerized fact patterns, but rather to everyday occurrences. Although the established and accepted common-law doctrines as they relate to this area have remained almost without change these many centuries, their application must be sensitive to today’s living. That is, the “ trap ” doctrine or ‘ ‘ hidden danger ” theory which evolved through the geography of large estates, farms, and freeholds, as related to social guests must be applied to a society that now finds itself in daily contact with one and two-family modest dwellings. Thus, the principles that have been imbedded in the granite of common law must assume a form, shape and design that complement our modern age. It follows, therefore, that the centuries-old criteria that have heretofore applied to such items as the loose rock next to the outside well, or to the broken floorboard of the squire’s stables must be revisited in a manner that more closely resembles our present way of life. It appears that these attitudes and immunities enjoyed by landowners as they relate to licensees (and social guests) “ stem originally from feudalism and the feeling of sanctity about land ownership ”. (James, Inroads on Old Tort Concepts, 14 NACCA L. J. 226, 229 [1954].) In this context Mr. Justice Jacobs, speaking for the majority of the highest court in New Jersey in Taylor v. New Jersey Highway Auth. (22 N. J. 454, 463) stated: “In modern times the immunities have rightly, though gradually, been giving way to the overriding social view that where there is foreseeability of substantial harm landowners, as well as other members of society, should generally be subjected to a reasonable duty of care to avoid it. Many recent New Jersey decisions furnish vivid evidence of this trend and the marvelous adaptability of the common law in reshaping old doctrines to meet the needs of our own period in history.” Viewed in this posture, does not the £ £ curled up rug in the entranceway of a *785 one-family house ” constitute as much of a “ trap ” today as did the broken floorboard in the squire’s stables centuries ago ? Although the law does not change, its application should be responsive to a society that does.
Since our concern in the instant matter is addressed to the status of a social guest (interchangeably described as a licensee), one of the landmark cases on the subject should be cited. In Wilder v. Ayers (2 A D 2d 354, 355-356, supra) the court stated: “To a licensee the owner owes no greater duty than to avoid the maintenance of traps, hidden dangers, or wanton and reckless conduct to which the licensee may be exposed, unless the latter is first warned * * * It has frequently been said that a licensee, such as a social guest, takes the premises as he finds them and that he is entitled to no greater protection than a member of the owner’s household.” (See, also, Gross v. Lewis, 5 N Y 2d 884; Kreger v. Ladd, 30 Misc 2d 736; Krause v. Alper, 4 N Y 2d 518; Passer v. Schimmel, 6 Misc 2d 629; Levine v. Barfus, 28 A D 2d 896.)
In the face of such prestigious authority as that cited above, how then can one but conclude that a social guest is not entitled to recover under the circumstances of the facts recited in the narrative above. It is at this juncture that this court makes application of the existing rules of law to the specific facts now before it in arriving at its judgment which reason permits and logic should mandate.
Existing authority makes it judicially difficult to distinguish the right of a bare licensee, who happens to be upon the premises of the owner through the slightest permission, with that of a guest who is invited and welcomed to enjoy the hospitality and social graces of one’s home. To suggest that the host is under no greater duty to such a guest than he would be towards a member of his own household is perhaps unrealistic and contrary to everyday custom. Would a proper host not be embarrassed at his guests’ viewing dirty dishes in the sink, unmade beds, or clothing and rubbish scattered about the furniture and floors? These are but the niceties that distinguish a host’s attitude towards his invited guest, as opposed to the barest of licensees. Translated into terms of liability, should not the host-owner be under the same duty he feels towards his social guest that at least equal the distinction he makes as between his guest and a bare licensee, or household member? It is difficult to suggest what that specific duty might be, but would it be unreasonable to require such a host to disclose those areas of danger which are neither hidden nor created by the host’s affirmative acts?
*786 Perhaps there should be a fourth category or status of person in addition to the trespasser, bare licensee, and invitee. (Would not a fourth category be far more realistic than the characterization that the social guest is a person “who, in a sense * * * [is] temporarily adopted into the possessor’s family.” Restatement, Torts, p. 897.) Such category could be that of a social guest who stands in his own status with a correlative duty visited upon the owner of premises to give warning of those defects of which he, the owner has knowledge notwithstanding that they are neither hidden nor traps. In essence, have we not developed sufficiently in our society where the social guest is entitled finally to the comfort and security of a “ legal ” home of his own. Certainly such a construction would be more in step with the mores of today and the everyday living thereunder.
The conclusions of this court are not totally inconsistent with Cesario v. Chiapparine (21 A D 2d 272) or Levine v. Barfus (28 A D 2d 896). Mr. Justice Hopkins, speaking for a unanimous court in the Cesario case (supra, p. 276) stated: “the courts have categorized a social invitee as a licensee, though 1 a verbal paradox ’ may thereby seem to be engendered. [Cases cited.] To date, the tendency, to broaden the landowner’s liability by treating licensee and business invitee alike has failed [citation], except in England where by statute the landowner is bound to use a common duty of reasonable care towards both the licensee and the invitee (Occupiers’ Liability Act [1957] 5 & 6 Eliz. II, ch. 31, eff. Jan. 1, 1958).” (See, also, 3 Warren’s Negligence, 1968 Cum. Supp., pp. 45-46.)
Accepting the learned court’s decision in Cesario, supra, the redeeming areas of distinction rest, however, in that this court does not construe the status of a social guest as that of an invitee but establishes a fourth category wherein the duty owing, while not equaling that of an invitee, does exceed that owing to a bare licensee. To this extent both the Cesario and Levine eases (supra) are distinguishable. (See Wolfe v. Edwards, 1 A D 2d 742.)
With respect to the matter before this court, the duty to disclose a defect must be held to be corelated to the nature and situs of the defect and the probability of contact as it relates to the social guest and the said defect. If, arguendo, the throw rug was located in a more remote section of the house, the issue to be determined would mitigate in the favor of the defendant. What, in fact, does make this rug defective, is its location and the overwhelming probability of its physical contact with others. Therefore, where a defective rug is permitted to remain in a portion of the premises over which a social guest must have *787 contact, (as in the entranceway of a dwelling) the defect, if permitted to remain without warning, must be at the peril of the owner of the premises even as it relates to a social guest. By this posture and construction, this court does not impose the duty upon the plaintiff guest to make an inspection with absolute scrutiny over every square inch of floor or rug over which he walks. Accordingly, this court finds as a matter of fact that the plaintiff did not, by his own negligence, contribute to the happening of this accident, and as such holds the doctrine of contributory negligence to be inapplicable. (Vella v. Seacoast Towers, 32 A D 2d 813, is held to be distinguished.)
Further, the owner of premises cannot assume absolute protection against liability merely by reason of the social status of his guest. Although he may be under no obligation to repair all defective areas of his household, he cannot with impunity invite a guest into his home and thereafter neglect to give warning to him of those dangers that are the likely ingredients of injury or harm to others. One who chooses to maintain a defective rug within the entranceway of his home does so at his own peril should an accident occur, proximately caused by such defect, and without proper warning being given to the injured party. For example, assume that someone other than the owner affixed a wire from one wall to the other wall of the premises, six inches above the floor, and that this fact was known to the owner of said premises. Would such an owner not be under the highest duty to either remove the wire or to give warning of its existence even as it relates to the barest of licensees ? The wire in such instance parallels the throw rug in this instance which corner, by reason of its defective and torn character, causes the entrapment of one’s foot. What then is the distinction between the two conditions recited above? The real difference is one of degree and not of substance! For here the defendant owner, having admitted that he knew of the existence of the curled-up corner of this throw rug at the entranceway, owed a duty to this plaintiff to give warning of its existence so as to avoid this accident. Failing so to do, he is charged with those damages proximately suffered by this plaintiff by reason of this failure of reasonable conduct.
For the reasons enumerated above, judgment is therefore awarded to the plaintiff in the amount as set forth on the official records of this court.